## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ANGELA STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00679** |
| | ) | **Judge Aleta A. Trauger** |
| **HEALTHCARE REVENUE** | ) | |
| **RECOVERY GROUP, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Angela Stewart brings claims against defendant Healthcare Revenue Recovery Group, LLC ("HRRG"), a debt collector, under the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act. (Doc. No. 60, Second Amended Complaint, at 1.) Now before the court are the plaintiff's Motion for Partial Summary Judgment (Doc. No. 77) and the defendant's Motion for Summary Judgment (Doc. No. 78).

The parties' filings have raised a number of threshold issues that the court must address before turning to the merits of either motion. First, under the Initial Case Management Order (ICMO) entered on October 19, 2020, no party is to file a motion for partial summary judgment without first seeking and then being granted leave of court. (Doc. No. 21, at 3–4.) The plaintiff did not seek such leave prior to filing her motion. In the interests of justice and the expedient resolution of this case, the court will nonetheless consider the motion. The defendant did not object to the filing of the motion, and it largely tracks the plaintiff's Response to the defendant's Motion for Summary Judgment.

For its part, the defendant misfiled important exhibits in support of its own Motion for Summary Judgment, including by filing two copies of the transcript of the plaintiff's second deposition, rather than filing the transcript of each of the plaintiff's two depositions on which its motion relies. It failed to correct this error until being directed by court staff to do so, despite being notified of the error in the plaintiff's response documents. It also omitted a critical exhibit to a witness's declaration, which it supplied only after the plaintiff pointed out the error. Despite the belatedness of these filings, the court will consider these documents, for what they are worth.

Third, Local Rule 7.01 provides that replies in support of dispositive motions shall not exceed five pages "without leave of court," but the ICMO entered in this case expressly provides that optional reply briefs in support of dispositive motions may be up to 20 pages long. Apparently neither party actually reread the ICMO, even though it was prepared by the parties themselves. The defendant, in derogation of both the Local Rule and the ICMO, filed a 28-page reply brief (Doc. No. 83), to which it attached, among other exhibits, a "Second Concise Statement of Undisputed Facts," purportedly in accordance with Local Rule 56.01(b) (Doc. No. 83-4, at 1). Local Rule 56.01(b) provides that a motion for summary judgment must be accompanied by a (single) "separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Rule 56.01(c) permits a party *responding* to a motion for summary judgment to include with its response a separate "concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried." L.R. 56.01(c). Neither of these rules authorizes a party moving for summary judgment to file a second statement of undisputed facts with its reply brief.

The plaintiff did not move to strike these documents, but she apparently voiced an objection to the defendant directly. The defendant thereafter submitted an Amended Reply limited to five

pages "in order to conform with Local Rule 7.1 and with Plaintiff's consent" (Doc. No. 85, at 1), to which it has re-attached all of the same exhibits attached to the original Reply, *except* for the Second Concise Statement of Undisputed Material Facts. In light of this filing, the court considers the Amended Reply and its exhibits as the operative filing and will not consider the original 28-page Reply or the defendant's Second Concise Statement of Undisputed Material Facts in addressing the defendant's Motion for Summary Judgment.

Finally, the plaintiff argues that the court must exclude from consideration the Declaration of Karl Hillard (Doc. No. 83-1), which the defendant filed and has cited in support its own Motion for Summary Judgment and in opposition to the plaintiff's Motion for Partial Summary Judgment. Karl Hillard is HRRG's Assistant Vice President and custodian of records and was apparently deposed as the defendant's Rule 30(b)(6) representative. (Doc. No. 74, Hillard Dep. 9;[1] Doc. No. 83-1, Hillard Decl. ¶¶ 1, 12.) The plaintiff argues that Hillard's Declaration must be excluded under the "sham affidavit doctrine" and the hearsay rule (Doc. No. 81, at 4).

Under the Sixth Circuit's sham-affidavit rule, "a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021) (citations omitted). The appellate court has indicated that the rule may apply in two situations: (1) when "a witness's affidavit 'directly contradicts' the witness's prior testimony"; and (2) when "the witness's affidavit is in tension with that prior testimony as long as the circumstances show that the party filed the

---

[1] Portions of Hillard's March 31, 2021 deposition are found at three places in the record. The plaintiff filed an almost-complete transcript with her Motion for Partial Summary Judgment, but the parties have also filed several shorter excerpts. (Doc. Nos. 74, 78-5, 81-3.) To avoid such a multiplicity of filings, the court's preference is that the parties file one complete transcript, with any necessary redactions, of any deposition transcript upon which they rely. In any event, the page numbers referenced herein are to the deposition transcript pagination rather than to the page numbers assigned by the court's electronic filing system.

affidavit merely to manufacture 'a sham fact issue.'" *Id.* (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)).

The plaintiff asserts that the doctrine applies in this case, because Hillard testified in his deposition that, when an account is assigned to HRRG for collection, HRRG does not "get any documents" and that it primarily receives from its clients "demographic information" about the debtor. (Doc. No. 81, at 5 (quoting Doc. No. 81-3, Hillard Dep. 20–21).) But, she claims, he stated in his Declaration that HRRG keeps and maintains its client's business records, including consent forms, and relies on such records, and he "affirmatively represents that Defendant 'possessed the attached Consent Form that was electronically sent to' it." (*Id.* (citing and quoting Doc. No. 78-6, Hillard Decl. ¶¶ 3–5, 8, 10–11).)[2] The plaintiff also points to interrogatory answers supplied by HRRG, which did not supply either the Consent Form or a hospital registration form ("Registration Form"), both of which the defendant relies upon in connection with the dispositive motions.

The plaintiff particularly objects to the following statement in Hillard's Declaration:

The attached Consent Form was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters, were kept in the course of the regularly conducted activity of [the creditor], and were made by the regularly conducted activity of [the creditor] as a regular practice.

(Hillard Decl. ¶ 9.) The plaintiff argues that the Declaration "directly contradicts" his prior sworn deposition testimony. (Doc. No. 81, at 6.)

She also argues that the statement is facially false and based on a double layer of hearsay, as it is apparent that Hillard has no personal knowledge regarding when the Consent Form was

---

[2] The plaintiff also objects that the Consent Form was not actually attached to Hillard's Declaration. In response, the defendant filed, along with its Reply, an "amended" Declaration, which is actually the original Declaration but to which the defendant attached the Consent Form referenced therein. (Doc. No. 83-1, at 4.)

created, how it was made, or who made it, nor could he possibly know whether it was a document "kept in the course of [the creditor's] regularly conducted [business] activity." (*Id.*) Moreover, Hillard testified in his deposition that his knowledge regarding the Consent Form was based solely on information provided to HRRG by its client. (Doc. No. 78-5, Hillard Dep. 100; Doc. No. 74, Hillard Dep. 101–02, 122.) He has no personal knowledge of when Stewart's daughter was admitted to the hospital or what happened when she was there. (Doc. No. 74, Hillard Dep. 122–23.)

In response, the defendant points out that the plaintiff received both of the documents the plaintiff now seeks to exclude—the Registration Form and the Consent Form—in June 2021 with the defendant's Third Supplemental Responses to Plaintiff's Request for Production of Documents, well before the defendant filed its Motion for Summary Judgment. In response to the plaintiff's Statement of Additional Facts, the defendant also argues that the plaintiff cherry-picks from Hillard's testimony and that his Declaration does not directly contradict his deposition testimony.

Indeed, Hillard testified in his deposition that his company does not receive "paper documents" with its accounts; it typically receives an electronic file containing largely demographic information and information relevant to the collection of a specific debt. (Doc. No. 81-3, Hillard Dep. 21.) His Declaration clarifies that additional documents—such as consent forms—are "made available to HRRG upon request" and that, in the course of its regularly conducted activity, HRRG possessed the Consent Form that was electronically sent to it by the medical provider and attached as an exhibit to his Amended Declaration. (Hillard Decl. ¶¶ 4, 8.) The court finds no inherent contradiction in Hillard's statement that HRRG obtains additional documents upon request. Moreover, as also addressed, below, Hillard is clearly competent to

testify that HRRG obtained the Consent Form and Registration Form from its creditor client in connection with the plaintiff's accounts. Further, while the court finds that Hillard's statements regarding the execution and maintenance of the Consent Form cannot be reasonably credited, the discounting of those statements does not require excluding the Declaration—or the Consent Form attached to it—from consideration. The court will not strike the Declaration.

Other issues with the parties'—particularly the defendant's—submissions are addressed below, in the context in which they arise.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *Id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.* A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018). If the summary judgment movant meets that burden, then, in response, the non-moving party must set

forth specific facts showing that there is a genuine issue for trial. *Id.* at 628. A party asserting that a fact either cannot be or is genuinely disputed must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A).

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). In deciding the motion, the court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Once an objection is properly made, the proponent must 'show that the material is admissible as presented or . . . explain the admissible form that is anticipated.'" *Mangum v. Repp*, 674 F. App'x 531, 536–37 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

"[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). In this situation, the court must "evaluate each motion on its own

merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). The fact that both parties filed motions for summary judgment does not mean that judgment as a matter of law is necessarily warranted in favor of one of the parties, even if many of the facts are stipulated or agreed upon. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001) ("A trial court may conclude, when reviewing the undisputed material facts agreed upon by the parties and drawing all inferences, in turn, for the non-moving party, that a genuine issue exists as to those material facts, in which case the court is not permitted to resolve the matter, but rather, must allow the case to proceed to trial.").

## II.   THE PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS[3]

Plaintiff Angela Stewart is a natural person allegedly obligated to pay a debt. Defendant HRRG, in the course of its business, regularly attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another and is a "debt collector" as the term is defined by the FDCPA, 15 U.S.C. § 1692a(6). Karl Hillard is HRRG's Assistant Vice President and custodian of records. (Doc. No. 74, Hillard Dep. 9; Doc. No. 83-1, Hillard Decl. ¶¶ 1, 12.)

HRRG has (or had) two different "accounts" for the plaintiff relating to two allegedly unpaid debts (collectively, the "Debt") incurred in connection with medical services provided for Stewart's minor child. The medical services related to the accounts were provided, respectively, on October 27, 2018 and December 4, 2018. The creditor/medical provider assigned the first account ("First Account") to HRRG for collection on April 22, 2019 and the second account ("Second Account"), on June 17, 2019. HRRG did not verify the information provided by its client

---

[3] The facts set forth in this section are derived from the Defendant's Response to the Plaintiff's Statement of Facts (Doc. No. 80-1) and are undisputed for purposes of the plaintiff's Motion for Partial Summary Judgment, unless otherwise indicated.

regarding the Debt. Instead, it simply assumed that the information provided by the creditor was valid.

HRRG uses a third-party vendor, Nordis, for "all of [its] letters" sent to consumer debtors. (Doc. No. 74, Hillard Dep. 26, 53.) As part of the process, HRRG provides Nordis "with the data they need to send the letters." (*Id.* at 54.) HRRG, through Nordis, sent the plaintiff four letters in connection with the Debt. The plaintiff never actually received any of these letters, except through discovery in this case. (Doc. No. 78-4, Stewart Sept. 24, 2021 Dep. (hereinafter, "Stewart 2021 Dep."), at 63, 64, 65;[4] Doc. No. 81-1, Pl.'s Resp. to Def.'s Statement of Fact No. 22.)

The plaintiff states that she did not give HRRG consent to communicate with any third party in connection with the collection of the Debt. (Doc. No. 77-7, Stewart Decl. ¶ 13.) The defendant purports to deny this statement, but its denial is not supported with reference to any citation to the factual record, as required by Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 56.01(c). The court, therefore, will consider the fact to be undisputed for the purposes of Stewart's motion. *Accord, e.g.*, *Braden v. WESCO Distrib., Inc.*, No. 3:18-cv-00644, 2019 WL 6329662, at *6 (M.D. Tenn. Nov. 26, 2019) (Trauger, J.).

The plaintiff has a cell phone, and her cell phone number ends in 2735. This was the only number HRRG called to contact the plaintiff in connection with the Debt. HRRG obtained Stewart's telephone number from its client, the medical provider. (Doc. No. 74, Hillard Dep. 83, 102, 177–78.) Stewart avers, however, that she did not provide the medical provider with her telephone number in connection with its provision of services to her minor child in October or

---

[4] While the plaintiff provided deposition excerpts, the defendant produced the entire transcript of the plaintiff's September 24, 2021 deposition, and the court refers to that filing. The transcript was produced in condensed form, and the page numbers referenced herein are to the deposition transcript pagination rather than to the page numbers assigned by the court's electronic filing system.

December 2018, that she did not consent to calls from the medical provider—or from a debt collector acting on behalf of the medical provider—regarding the charges for those services, and that she did not consent to the defendant's calling her using an artificial or prerecorded voice. (Doc. No. 77-7, Stewart Decl. ¶¶ 5–8, 10–12; *see also* Stewart 2021 Dep. 25, 42, 43.)

In its Response to the plaintiff's Statement of Undisputed Facts, HRRG also purports to deny the plaintiff's statements that she did not provide her telephone number to the medical provider, did not consent to calls from a collection agency, and did not consent to calls using an artificial or prerecorded voice. Perhaps unsurprisingly, in light of the defendant's generally lackadaisical approach to this case, these denials are not supported by citations to the factual record. Ordinarily, as indicated above, this failure to comply with Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 56.01(c) would permit the court treat the relevant facts as undisputed for the purposes of Stewart's motion. However, the court notes that there is actually evidence in the record to support the defendant's denials, cited and relied upon by the defendant in connection with its own Motion for Summary Judgment, and the court exercises its discretion to consider those materials. Fed. R. Civ. P. 56(c)(3).

In response to Stewart's Statement of Undisputed Fact No. 21, which asserts that HRRG "obtained Plaintiff's cellular telephone number from its client," HRRG

> admits only that it obtained Plaintiff's cellular telephone number from a consent form signed by Plaintiff, under which terms Plaintiff specifically authorized collection agencies to contact her about her account for purposes of collection by telephone, including wireless telephone numbers and including the use of pre-recorded or artificial voice messages and/or automated dialing.

(Doc. No. 80-1, Def.'s Resp. to Pl.'s Statement of Fact No. 21.)

Although the defendant's Response to the Plaintiff's Statement of Fact does not expressly cite to where in the record the Consent Form can be found, it is in the court's record, as noted above. Karl Hillard testified that, among the documents sent to HRRG electronically by its client

in connection with Stewart's alleged Debt, HRRG is in possession of a Consent Form that bears the signature of Angela Stewart. (Hillard Decl. ¶¶ 4, 8–11; Doc. No. 83-1, at 4.) The Consent Form in question appears on its face to have been drafted by the medical provider in question, the Scottsville Medical Center ("SMC" or "Medical Center"), and, by her signature, the signatory agreed that the Medical Center and its

> collection agencies may contact me regarding . . . information about my account or for the purposes of collection by telephone at any number provided by me including wireless telephone numbers . . . . Methods of contact may include the use of pre-recorded or artificial voice messages and/or automated dialing.

(Doc. No. 83-1, at 4.) Although Stewart denies giving any such consent and, thus, by extension, denies having signed the Consent Form, at least in connection with the services that gave rise to the Debt, the defendant is in possession of a Consent Form, provided by its client and purportedly signed by Angela Stewart, the debtor whose accounts were to be pursued by HRRG, which purported to grant consent to contact by a debt collector. Although the Consent Form is not dated and does not contain any additional information to verify that the Angela Stewart who signed the form is the same person as the plaintiff in this lawsuit, it does reflect the redaction of a name, the initials of which are B.A, an associated date of 10/14, with the year redacted, and a typed date of 12/04/18. These notations are relevant because: (1) the initials of the name of the child for whom the plaintiff sought the medical services that gave rise to the disputed Debt are B.A. (*see* Stewart 2021 Dep. 13–14); (2) the plaintiff stated in her deposition that B.A.'s birthday is October 14 (*id.* at 21); and (3) December 4, 2018 is one of the two dates on which the plaintiff concedes, at least for purposes of her motion, that she obtained medical services for her daughter B.A. (Doc. No. 77-1, Pl.'s Statement of Fact No. 7.)

   In addition, HRRG is in possession of what appears to be a Registration Form from the SMC, regarding which the plaintiff was questioned during her deposition. Although the plaintiff

denies providing her telephone number to the SMC upon her child's admission to the emergency room, Hillard testified that it obtained the Registration Form from the SMC (Doc. No. 74, Hillard Dep. 122), and the plaintiff admitted that the Registration Form reflects her current telephone number, even though it also reflects what was, even in the Fall of 2018, an outdated address for her (Stewart 2021 Dep. 22–23; Doc. No. 81-1, Pl.'s Resp. to Def.'s Statement of Undisp. Fact No. 1).

Based on all of this evidence, the court finds that there is a genuine factual dispute as to whether the plaintiff signed the Consent Form at the time of her daughter's admission to the SMC. On its face, the Consent Form reflects information that gives rise to a permissible inference that the plaintiff signed it in connection with at least one of her daughter's hospital admissions. At the same time, however, the form, at least in theory, could have been signed by some other Angela Stewart, and, even assuming it was signed by the plaintiff herself, there is no affirmative proof as to when or under what circumstances the form was signed.

Likewise, there is also a material factual dispute as to whether the plaintiff actually provided her telephone number to the hospital at the time of her daughter's hospital admissions. Although the Registration Form reflects the plaintiff's correct telephone number, the plaintiff's contact information could have already been in the hospital's database, a theory that is supported by the fact that the Registration Form reflects an outdated address for the plaintiff. The information also could have been supplied to the hospital by the plaintiff's daughter's insurer. No person from the hospital has testified as to how the plaintiff's data was presented to or stored by the SMC, and Karl Hillard does not have the ability to supply that information. All he can legitimately claim is that the hospital provided the document to his company. Thus, it is clear only that HRRG obtained

both the Consent Form and the Registration Form from the SMC at or sometime after the hospital referred collection on the Debt to HRRG.

HRRG uses a telephone dialing system called Guaranteed Contacts ("GC Dialer") from Ontario Systems to place telephone calls to debtors. When HRRG makes an outbound call and the GC Dialer detects an answering machine, the GC Dialer leaves a prerecorded message. On or around September 23, 2019, HRRG, using the GC Dialer, left Stewart a voicemail message using an artificial or prerecorded voice. (Hillard Dep. 76–77, 78.) The voicemail message stated, in substantial part:

> [HRRG] calling. Please return our call at 1-800-984-9115. HRRG is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Please do not erase this message until you have returned our call at 1-800-984-9115. Visit us at hrrgcollections.com.

(Doc. No. 77-1, Pl.'s Request for Admission No. 9; Hillard Dep. 78.) Hillard agreed that this message "accurately describes the script defendant uses for its voicemail messages." (Hillard Dep. 78.) In response to the plaintiff's Statement of Undisputed Facts, the defendant purports to deny that its "standard prerecorded voicemail message is virtually identical" to the message it left for Stewart on September 23, 2019, but it does not provide any support for its denial, nor does the record appear to support its denial. The court concludes that this fact is undisputed for purposes of the plaintiff's Motion for Partial Summary Judgment.

HRRG's account notes show "gc" when a call is placed to a consumer using the GC Dialer. HRRG placed telephone calls to Stewart's cell phone and left 62 voicemail messages using an artificial or prerecorded voice. Each of these calls was made in connection with the collection of a debt.

**III.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS[5]**

Insofar as the facts must be viewed differently for purposes of the defendant's Motion for Summary Judgment, those facts are set forth here.

In 2018, the plaintiff lived with her minor daughter at 2493 Franklin Road, in Scottsville, Kentucky. While living in Kentucky, the plaintiff obtained health insurance for her daughter through the Passport Health Plan, which requires enrollment with the Kentucky Medicaid program.

On October 27, 2018, the plaintiff admitted her minor daughter for treatment at the Scottsville Medical Center emergency room in Scottsville, Kentucky. The plaintiff acknowledges that her daughter had a second visit to the SMC, but she does not recall the exact date. (Stewart 2021 Dep. 37.) The defendant did not introduce any evidence to affirmatively establish the second date of admission.

Citing Exhibit 2 to the plaintiff's September 24, 2021 deposition, the Registration Form, the defendant states that, based on the information the plaintiff provided to the emergency room at each of these visits, the plaintiff's cellular phone number was provided as a contact number. (Doc. No. 78-2, Def.'s Statement of Undisp. Fact. No. 5.) In response, the plaintiff disputes that admissible evidence exists to support the assertion that she provided her telephone number as a contact number and, subject to that objection, contends that the fact is disputed. She asserts that the Registration Form identified as Exhibit 2 to her deposition was not filed with the deposition transcript and is not in the court's record and further states that the defendant has never produced authenticated medical records or the business records of its client. (Doc. No. 81-1, Pl.'s Resp. to

---

[5] Unless otherwise indicated, the facts set forth in this section are derived from the Plaintiff's Response to the Defendant's Statement of Facts (Doc. No. 81-1) and are undisputed for purposes of the defendant's Motion for Summary Judgment.

Def.'s Statement of Undisp. Fact No. 5.) As set forth above, the plaintiff affirmatively testified that she did not give the hospital her telephone number. (Stewart 2021 Dep. 42, 43.)

The defendant, without actually rectifying its failure to include Exhibit 2 to the plaintiff's 2021 deposition as an exhibit in support of its Motion for Summary Judgment, submitted with its Amended Reply a copy of its Third Supplemental Responses to the Plaintiff's Requests for Production of Documents, which it produced to the plaintiff on June 24, 2021. This production appears to include the same Registration Form identified as Exhibit 2 to the plaintiff's 2021 deposition. (Doc. No. 85-2, at 2.) In the defendant's written Responses to Requests, the defendant responded to the plaintiff's request for "[a]ll documents Defendant sent to and/or received from any other person mentioning Plaintiff or related to the collection of Plaintiff's account," by stating: "Please see attached copy of October 27, 2018 records from Scottsville Medical Center currently in Defendant's possession, custody or control." (Doc. No. 85-2, at 10.) During her deposition, counsel for the defendant showed the plaintiff Exhibit 2, which he identified, without objection from the plaintiff, as the October 27, 2018 SMC record for the plaintiff's child's ER admission. The Registration Form reflects a "Service Date" of October 27, 2018. (Doc. No. 85-2, at 2.)

The following colloquy concerning the Registration Form identified as Exhibit 2 took place during the plaintiff's 2021 deposition:

> Q. Okay. So in looking at Exhibit 2, which at the top says Medical Center Scottsville located at 456 Burnley Road in Scottsville, Kentucky, . . . you probably can see that there are black boxes over certain places, and that is because . . . that's personal information of your daughter's. . . .
>
> This is a medical record from October 27, 2018, from the Scottsville Medical Center. And it . . . also states that the patient's date of birth is October 14th. Is that the same day as your daughter's birthday?
>
> [Objection lodged.]
>
> A. Yes.

Q. Okay. And the address, if you can see it, under the section that says patient information, the address that is listed is 1015 West Street, lot four, Gallatin, Tennessee, 37066. Can you see that?

A. Yes.

Q. Okay. And earlier in your deposition you testified that you were living at the Franklin Road in Scottsville address. Is that correct?

A. Yes.

. . . .

Q. Okay. Do you know why the West Street address is listed on this document?

A. No, I do not.

Q. Okay. So then under primary phone number, do you see where it reads [redacted]?

A. Yes.

Q. And is that your cell phone number?

A. Yes.

. . . .

Q. All right. So talking about the medical record that's on the screen now. It's dated October 27, 2018. And we're talking about the patient's information section.

Do you know anyone in the emergency room that day who would have your address—your address and telephone information that could have given it to the emergency room admission personnel?

[Objection lodged.]

A. No.

Q. Okay. Do you believe that you provided the address and phone number information that's on this form to the emergency room admissions people on October 27, 2018?

A. No.

Q. How do you believe that they got it?

A. I don't know.

(Stewart 2021 Dep. 21–25.)

The Registration Form identifies the plaintiff as "guarantor" on the patient's account, lists her address as the same as that provided for the patient (1015 West Street Lot 4, in Gallatin, Tennessee), and reflects her correct telephone number—the same telephone number as that listed for the patient in the "patient information" section. (Doc. No. 85-2, at 2; *see also* Stewart 2021 Dep. 72 ("Q. That is your cell phone, correct? A. Correct.").) The insurance information on the form is redacted, presumably because it relates to the plaintiff's daughter. The Registration Form does not contain any signature and appears to have been filled in electronically by Medical Center staff.

The plaintiff also objects to the truth of the defendant's assertion that the "admissions forms list Plaintiff as the 'guarantor' of the patient and living at 1015 West Street Lot 4, Gallatin, Tennessee 37066," on the basis that

> no such document was included with Defendant's motion and no documents identified as "admission forms" were produced in this matter. Throughout the course of discovery, Defendant has neither produced authenticated medical records or business records of its client, nor identified any individuals to authenticate any such records. Thus, the unfiled document lacks foundation and is inadmissible hearsay.

(Doc. No. 81-1, Pl.'s Resp. to Def.'s Statement of Undisp. Fact No. 6.)

The plaintiff cannot reasonably dispute the truth of the assertion that the Registration Form in fact identifies her as the guarantor and provides an outdated address for her. What she is actually objecting to is the truth of the information included on the face of the Registration Form—specifically, her designation as guarantor—and the assertion that she gave her telephone number to the SMC upon her daughter's admission. She also objects to the introduction of the Registration Form into evidence, on the basis that it is hearsay, is unauthenticated, and has not been presented and—in light of its introduction by Karl Hillard alone—cannot be presented in admissible form.

The court finds, at this juncture, that the introduction of this document establishes only that HRRG received the Registration Form from the SMC as a document in the plaintiff's file pertaining to her accounts with the SMC, HRRG's client. Karl Hillard, as discussed above, is competent to testify to the existence of documents in HRRG's regularly kept business records and as to their provenance. However, that testimony does nothing to establish how the Registration Form came to be in SMC's records—who created it, how, based on what information. The plaintiff affirmatively testified that she did not know why the Registration Form contained either her telephone number or an outdated address. As set forth above, she affirmatively denies providing her telephone number to the SMC. The plaintiff's testimony that she never gave her telephone number to the SMC constitutes evidence that she did not and that the SMC obtained it from some other source. There is, in other words, a genuine factual dispute as to whether the plaintiff gave her telephone number to the SMC.

As also discussed above, HRRG asserts that the plaintiff signed the Consent Form attached as an exhibit to Hillard's Amended Declaration. For the reasons also discussed above, the court finds, for purposes of the defendant's Motion for Summary Judgment, too, that there is a material and genuine factual dispute as to whether the plaintiff signed this document in connection with either of her daughter's two admissions to the SMC.

HRRG asserts that the plaintiff owed balances of $1,014 and $968 for medical services provided to her minor daughter on two different dates in the fall of 2018. In support of this assertion, it cites to the dunning letters attached to the Second Amended Complaint (Doc. No. 60, at 17–26.) The plaintiff responds, and the court agrees, that the fact that HRRG sent her dunning letters reflecting these figures does nothing to establish that Stewart actually owed these amounts. Instead, it establishes only that the SMC conveyed to HRRG that the plaintiff owed those amounts.

## IV.    DISCUSSION

### A.    The Parties' Motions

Based largely on the facts set forth in her Statement of Undisputed Facts, the plaintiff initiated this lawsuit in August 2020. Her Second Amended Complaint ("SAC") was filed, with the court's permission, on July 16, 2021. It asserts four claims or "Counts" for violation of the Fair Debt Collection Practices Act ("FDCPA") and one claim for violation of the Telephone Consumer Protection Act ("TCPA"). The plaintiff moves for summary judgment only on the TCPA claim (Count V of the SAC) and two of the FDCPA claims (Counts I and IV). Specifically, Stewart argues that (1) the undisputed facts establish that the defendant violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing 62 telephone calls to her cell phone number and leaving voicemail messages using an artificial or prerecorded voice; (2) the defendant violated the FDCPA, 15 U.S.C. § 1692c(b), by disclosing the alleged Debt to a third party without the plaintiff's consent on at least four occasions; and (3) the defendant violated the FDCPA, 15 U.S.C. § 1692e(5), by placing calls to her cell phone using an artificial or prerecorded voice, in violation of the TCPA, and by "implying that it will illegally contact, or continue to illegally contact, the consumer until the debt is paid." (Doc. No. 77, at 10.) The defendant has filed a Response to the Motion for Partial Summary Judgment (Doc. No. 80) and a Response to the Plaintiff's Statement of Undisputed Facts (Doc. No. 80-1). The plaintiff filed a Reply (Doc. No. 82), which largely incorporates by reference the arguments made in her Response in Opposition to the Defendant's Motion for Summary Judgment, which, in turn, mirror the arguments made in her own Motion for Partial Summary Judgment.

The defendant, contemporaneously, filed its own Motion for Summary Judgment. It argues that: (1) Count I, asserting a claim under the FDCPA, 15 U.S.C. § 1692c(b), based on the defendant's communication with a third party about the plaintiff's debt, must be dismissed,

because the plaintiff fails to allege that she suffered actual damages as a result of the communications being printed by a third party vendor and, alternatively, that "[p]roviding secure access to encrypted address info on a server to allow a high-speed printing machine to print an address on a letter, fold it and insert it in an envelope and mail it" is not a "communication" for purposes of this provision of the FDCPA (Doc. No. 78-1, at 9); (2) Count II is subject to dismissal because the plaintiff fails to show that she was misled or deceived in connection with HRRG's letters, since she never received the letters; (3) HRRG is entitled to summary judgment on Counts III and IV of the SAC, for violation of 15 U.S.C. § 1692e(2)(A) and (e)(5), because the plaintiff consented to being financially responsible for her daughter's medical debt; and (4) HRRG should be granted summary judgment on the plaintiff's TCPA claim, because HRRG did not use an automated telephone dialing system, and the plaintiff consented to being contacted by HRRG using a prerecorded or artificial voice.

The plaintiff filed a Response to the Motion for Summary Judgment (Doc. No. 81) and a Response to the Defendant's Statement of Undisputed Facts (Doc. No. 81-1), as well as her own Statement of Additional Facts as to which she contends there is a material factual dispute (Doc. No. 81-2), as authorized by Local Rule 56.01(c)(3). As previously noted, the defendant filed an initial Reply, which the court has not considered, as it was superseded by an Amended Reply, to which were attached several exhibits. (Doc. Nos. 85, 85-1, 85-2, 85-3.)

**B.    Analysis**

*1.    Count V—TCPA Violation*

The relevant provision of the TCPA makes it unlawful for any person within the United States to

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing*

*system or an artificial or prerecorded voice* . . . to any telephone number assigned
to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA creates a private right of action for

violation of this provision. *Id.* § 227(b)(3); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163,

1167 (2021). Based on the clear language of the statute, a plaintiff establishes a claim for violation

of this provision if she shows that the defendant (1) placed a call to a cellular or wireless telephone

number (2) using any automatic dialing system and/or a prerecorded or artificial voice, (3) without

the plaintiff's consent. S*trand v. Corinthian Colleges, Inc.*, No. 1:13-CV-1235, 2014 WL 1515494,

at *2 (W.D. Mich. Apr. 17, 2014); *see also Cataldi v. Ocwen Loan Servicing, LLC*, No. 17-11487,

2017 WL 5903440, at *1 (E.D. Mich. Nov. 30, 2017).

In her Motion for Partial Summary Judgment, Stewart argues that she is entitled to

judgment as a matter of law on her TCPA claim, as there is no dispute that (1) HRRG placed calls

to her cellular telephone number ending in -2735; (2) HRRG left no fewer than 62 voicemail

messages using an artificial or prerecorded voice; and (3) and the plaintiff never consented to such

calls. (Doc. No. 77, at 4.) Instead, she argues, HRRG obtained her telephone number from its client

without verifying how or when the number was obtained. She contends that it is undisputed that

she did not provide her telephone number to the SMC at the time she obtained the services giving

rise to the Debt or consent to calls regarding such services.

The entirety of the defendant's response to this argument is devoted, irrelevantly, to the

argument that it did not use an automatic telephone dialing system, as that term is defined by the

TCPA, in placing calls to the plaintiff's cellular telephone number. (Doc. No. 80, at 2–3.) The

statute, however, prohibits calls made "using any automatic telephone dialing system *or an*

*artificial or prerecorded voice*," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), and the plaintiff's

claim is predicated on the latter. There is no dispute that the defendant placed calls to the plaintiff's cellular telephone number and left messages using an artificial or prerecorded voice.

In support of its own Motion for Summary Judgment, the defendant argues, again, that it did not use an automatic dialing system. It further contends, however, that the plaintiff consented to calls from collection agencies using an artificial or prerecorded voice.

The court finds that neither party is entitled to summary judgment on this claim. For purposes of both motions and as discussed above, there is a material and genuine factual dispute regarding whether the plaintiff provided her telephone number to the SMC at some point and as to whether Stewart signed the Consent Form authorizing the SMC and its "agents, attorneys or collection agencies" to contact her "for the purposes of collection by telephone at any number provided by me including wireless telephone numbers." (Doc. No. 83-1, at 4.)

Both motions for summary judgment will be denied as to Count V.[6]

---

[6] The defendant does not address the question of whether the plaintiff suffered sufficient damages from the alleged violation of the TCPA to give rise to standing. The court finds that the undisputed fact that the defendant left 62 voicemail messages using the plaintiff's cellular telephone is sufficient to establish the injury-in-fact element necessary for Article III standing. *Accord Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (finding in FDCPA case that the harm resulting from a single phone call bore a close relationship to the tort of intrusion upon seclusion—noting in particular that the tort "imposes liability for intrusions on a plaintiff's privacy, such as when a defendant demands payment of a debt by making repeated telephone calls 'with such persistence and frequency as to amount to a course of hounding the plaintiff'"—and was sufficient to establish Article III standing (quoting Restatement (Second) of Torts § 652B cmt. d (1977)); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (finding that the plaintiff, who alleged receipt of a single prerecorded telephone call in violation of the TCPA, had Article III standing, as the alleged "nuisance and invasion of privacy" resulting from a single prerecorded telephone gave rise to "the very harm that Congress sought to prevent" by enacting the TCPA).

2.    *Count I—Communication with a Third Party in Violation of the FDCPA*

a)    *The Claim Under § 1692c(b)*

The FDCPA prohibits debt collectors from, among other things, "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without the debtor's prior consent "given directly to the debt collector," subject to certain exceptions not at issue here. 15 U.S.C. § 1692c(b); *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 742 (6th Cir. 2015). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2); *Brown*, 804 F.3d at 742. "To convey information regarding a debt, a communication must at a minimum imply the existence of a debt." *Brown*, 804 F.3d at 742.

The only element of Stewart's § 1692c(b) claim that is reasonably in dispute is whether HRRG "communicated" with a third party about the Debt. Citing *Hunstein v. Preferred Collection & Management Services, Inc.*, 17 F.4th 1016, 1023 (11th Cir. 2021) ("*Hunstein II*"), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021), the plaintiff moves for summary judgment, arguing that HRRG violated this provision by sending four letters to her concerning the Debt through its "letter vendor," Nordis, without her consent, and that HRRG necessarily provided information to Nordis concerning the Debt in order to permit Nordis to generate the letters. (Doc. No. 77, at 6–7.)

Without actually referencing the term "standing," the defendant responds by arguing that the plaintiff has failed to show that she suffered actual damages as a result of this alleged FDCPA violation and that opinions from other jurisdictions provide compelling support for the conclusion that, the defendant claims, "communications with third parties are not subject to 15 U.S.C. § 1692c(b)." (Doc. No. 80, at 6 (citations omitted).) The defendant also argues that "[p]roviding

secure access to encrypted address information on a server to allow a high-speed printing machine to print an address on a letter, fold it and insert it in[to] an envelope and mail it" does not constitute a "communication 'in connection with the collection of any debt,'" since the mail service vendor is simply performing a ministerial function. (*Id.* at 7.)

b) *Article III Standing*

Irrespective of whether the defendant's argument regarding damages can be construed as attacking the plaintiff's standing to bring the § 1692c(b) claim, the issue of standing—a matter of subject-matter jurisdiction—can be raised at any time, including *sua sponte* by the court, as the federal courts have "an independent obligation to examine [our] own jurisdiction." *Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 360 (6th Cir. 2021) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Standing has three components: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of standing. *Id.* To meet this burden, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, at the summary judgment stage, the plaintiff "cannot rely on mere allegations, but must also set forth specific facts demonstrating his standing." *Ward*, 9 F.4th at 361 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)).

The only component of the standing analysis at issue here is whether the plaintiff can demonstrate that she suffered an injury in fact arising from the allegedly unauthorized communication with a third party "in connection with the collection of any debt," in violation of 15 U.S.C. § 1692c(b). The injury-in-fact requirement includes two sub-elements: the injury must be (1) particularized and (2) concrete. *Spokeo*, 136 S. Ct. at 1547–48. The Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. At the same time, the Court recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute" concrete harm, even without asserting "any additional harm." *Id.*

Even intangible injuries may be sufficiently "concrete." *Garland v. Orlans, PC*, 999 F.3d 432 436 (6th Cir. 2021) (citing *Spokeo*, 136 S. Ct. at 1548). The Sixth Circuit has explained:

> When trying to determine whether an intangible injury qualifies, *Spokeo* says that we should look to history and congressional judgment. If an "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit," then it is likely sufficient. Similarly, where Congress says a harm satisfies Article III, the harm likely does for two reasons: 1) "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and 2) Congress has the power to permissibly make some injuries "previously inadequate in law" constitutionally "cognizable." . . .

> Third, *Spokeo* specifically explained how courts should deal with plaintiffs who allege a violation of a statute that purports to create a cause of action. Statutory violation plaintiffs can show concrete injury in one of two ways. First, a plaintiff can show a concrete harm (if intangible, using the principles just explained) flowing from the violation. Second, in some cases a plaintiff could show that the procedural violation alone was enough with no other showing of harm. But the Court limited this second category to cases in which a plaintiff can show 1) that Congress created the statutory right to protect a concrete interest (if intangible, applying the principles just explained) and 2) the violation creates a "risk of real harm" to that concrete interest.

*Id.* at 436–37 (quoting *Spokeo*, 136 S. Ct. at 1549; internal citations omitted).

The plaintiff here does not allege a real risk of future harm to a concrete interest, which is the only means the Supreme Court has recognized for establishing that a statutory violation "by itself is a concrete injury." *Id.* at 437 (citing *Spokeo*, 136 S. Ct. at 1549). Thus, the court need only address the first: "whether [Stewart] has sufficiently alleged that the statutory violations caused [her] individualized concrete harm." *Id.*

To establish standing through that route, a plaintiff must show that the challenged action—the disclosure of private information to a third party without authorization—"resembles a harm traditionally regarded as providing a basis for a lawsuit." *Ward*, 9 F.4th at 362 (citing *TransUnion*, 141 S. Ct. at 2204). The "common-law or historical analogue need not be an 'exact duplicate' to make this showing." *Id.* (quoting *TransUnion*, 141 S. Ct. at 2209). The parties do not address this issue, but the court finds that the closest possible analogy is the harm of "invasion of privacy." The Sixth Circuit has recognized that "[a]ctions to enforce the "right of privacy" have long been litigated in American courts, and the tort of intrusion upon one's right to seclusion is recognized in most states." *Id.* (citing Restatement (Second) of Torts § 652A (1977)). Indeed, Tennessee recognizes this tort. *Accord Finley v. Kelly*, 384 F. Supp. 3d 898, 909 (M.D. Tenn. 2019) (Crenshaw, C.J.) ("What the fifty or so cases (published and unpublished) that have been reported online show is that, while [t]he Tennessee Supreme Court has not expressly recognized the public disclosure of private facts form of invasion of privacy, Tennessee courts of appeal have recognized this tort." (internal quotation marks and citations omitted)). And one of the purposes of the FDCPA is to stop abusive debt collection practices that contribute to "invasions of individual privacy." 15 U.S.C. § 1692; *Ward*, 9 F.4th at 362.

In support of her assertion that she has alleged concrete harm, the plaintiff cites the now-vacated *Hunstein II*, in which the district court had granted the defendant's motion to dismiss the

plaintiff's § 1692c(b) claim based on its finding that the defendant's communication with a "third-party mail house," so that it could prepare and mail a collection letter on behalf of the defendant, was not a communication "made in connection with the collection of a[ny] debt." *Hunstein II*, 17 F.4th at 1021. The plaintiff appealed, and the Eleventh Circuit *sua sponte* ordered additional briefing on the issue of whether the plaintiff had Article III standing to sue. The court initially concluded that the plaintiff had Article III standing and that the communication in question was made in connection with the collection of a debt. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1352 (11th Cir. 2021) ("*Hunstein I*"). The court then granted a petition for rehearing and, in light of the Supreme Court's intervening decision in *TransUnion*, vacated *Hunstein I* and issued a superseding opinion, *Hunstein II*.

In *Hunstein II*, the Eleventh Circuit reaffirmed its prior determination, again finding that the alleged violation of § 1692c(b) gave rise to a concrete injury in fact under Article III and that the transmittal of the consumer's personal information constituted a communication "in connection with the collection of any debt" within the meaning of § 1692c(b). *Hunstein II*, 17 F.4th at 1020. In that case, the plaintiff had incurred a debt to a hospital in connection with medical treatment provided to his minor son. The hospital assigned the debt to the defendant-debt collector. The debt collector, in turn, electronically transmitted to the third-party mail-service provider "sensitive medical information" about the debtor, including not only his status as a debtor, the amount of the debt, and to whom it was owed, but also that the debt concerned his minor son and his minor son's name. *Id.* at 1021. Notably, and as distinct from the case now before this court, the plaintiff alleged that the defendant conveyed this sensitive information about his minor son to "the employees of the unauthorized third-party mail house." *Id.*

Addressing the Article III injury-in-fact element, the court emphasized that the plaintiff alleged that the defendant had disclosed "'sensitive medical information—including his minor son's name and prior medical treatment—to 'the employees of an unauthorized third-party mail house.'" *Id.* at 1027. Thus, the court found that the plaintiff had

> alleged a harm similar in kind to the common-law tort of public disclosure of private facts: Under that tort, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

*Id.* at 1027 (quoting Restatement (Second) of Torts § 652D (1977)).

The court noted, in reaching its decision, that the Supreme Court's recent opinion in *TransUnion* "loom[ed] large." *Id.* at 1030. The Eleventh Circuit recognized that the Supreme Court had taken pains to explain that the plaintiffs in *TransUnion* had "forfeited" any argument that the defendant had "published" the plaintiffs' information to its own employees and to the vendors that printed and sent the mailings that the class members received. *Hunstein II*, 17 F.4th at 1031 (quoting *TransUnion*, 141 S. Ct. at 2210 n.6). As the Eleventh Circuit explained, the *TransUnion* Court had further noted that

> American courts had not "*necessarily* recognized disclosures to printing vendors as actionable publications" and suggested that, in such an instance, the plaintiff would need to present evidence that the defendant had "brought an idea to the perception of another" and that "the document was actually read and not merely processed." It then said that "the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently 'close relationship' to the traditional defamation tort to qualify for Article III."

*Hunstein II*, 17 F.4th at 1031 (quoting *TransUnion*, 141 S. Ct. at 2201 n.6) (emphasis added by Eleventh Circuit). The court in *Hunstein II* distinguished the case before it from *TransUnion* both on the facts and with respect to the procedural posture: *Hunstein II* involved a motion to dismiss in which the facts as alleged by the plaintiff were deemed to be true, and the plaintiff alleged that

his confidential information—specifically including information about his minor son—was "communicated" to the third-party mail house's employees. In addition, the court held that "overreading *TransUnion*'s dictum would transform *Spokeo*'s 'close relationship' test into a 'perfect match' test" and, in the end, " would contravene that decision's *holding.*" *Id.* at 1032.

Here, Stewart argues that the facts of her case are "virtually identical" to those of *Hunstein II* and that the case provides persuasive support for her § 1692b(c) claim. However, even if *Hunstein II* had not been vacated, several distinctions make a critical difference. First, this case is before the court on a motion for summary judgment, so the court cannot merely accept as true the allegations in the complaint. And second, the plaintiff does not allege—or present evidence of— facts showing that the defendant actually communicated sensitive facts to the third-party mailing vendor, in the sense that individuals employed by Nordis "actually read and not merely processed" that information. *TransUnion*, 141 S. Ct. at 2201 n.6.

In the wake of both *Hunstein II* and *TransUnion*, other district courts have dismissed for lack of standing similar § 1692c(b) claims premised on a defendant's disclosure of information to a third-party commercial mailing-services vendor. For example, in *Sputz v. Alltran Financial, LP*, No. 21-CV-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021), the court noted that the plaintiff, unlike the plaintiff in *Hunstein II*, did not allege that "a mail house employee reviewed or otherwise saw his information." *Id.* at *1. Analogizing the FDCPA claim to the common law tort of invasion of privacy, the court found that the plaintiff's allegations were not sufficient to establish injury in fact for purposes of standing:

> [T]he transmission of [Plaintiff's] information to [Defendant's] letter vendor does not remotely rise to the level of "publicizing" private information to the public at large. Because publicity is essential to liability in a suit for public disclosure of private facts, it follows that Plaintiff lacks standing. *See* Restatement (Second) of Torts § 652D; id. cmt. a. Like the plaintiffs in *TransUnion* who did not have standing because their credit reports were not disseminated to a third party, which

is "essential to liability in a suit for defamation," here, plaintiff lacks standing because his private information was not disclosed to the public, which is essential to liability in a suit for public disclosure of private information.

*Id.* at *3 (quoting *TransUnion*, 141 S. Ct. at 2209) (some internal citations omitted). The court rejected the plaintiff's argument that dissemination to a large group of people was not required, noting that the plaintiff, unlike the plaintiff in *Hunstein II*, did not allege "that any human being ever saw his private information." *Id.* at *4. Rather, it was clear from the complaint itself that the "mailing house used automated systems to 'populate' Plaintiff's information into a form that was mailed out" and that the entire point of using a mailing-services vendor is to "automate the process" of sending dunning letters. *Id.*; *accord Cavazzini v. MRS Assocs.*, No. 21-CV-5087 (ARR) (ST), 2021 WL 5770273, at *5–6 (E.D.N.Y. Dec. 6, 2021) (dismissing § 1692c(b) claim for lack of Article III standing, because the plaintiff/debtor failed to demonstrate injury in fact, and holding that the defendant's sharing of information about the debtor with a third-party mailing vendor did not constitute "publicity," was not analogous to an "invasion of privacy," and was not the type of abusive debt collection practice Congress sought to address with the passage of the FDCPA); *Liu v. MRS BPO, LLC*, No. 21 C 2919, 2021 WL 5630764, at *4 (N.D. Ill. Nov. 30, 2021) (finding lack of Article III standing and quoting approvingly the *Hunstein II* dissent's assertion that the "simple transmission of information along a chain that involves one extra link because a company uses a mail vendor to send out the letters about debt is not a harm at which Congress was aiming" in passing the FDCPA (quoting *Hunstein II*, 17 F. 4th at 1046 (Tjoflat, J., dissenting))); *Ciccone v. Cavalry Portfolio Servs.*, No. 21-CV-2428, 2021 WL 5591725, at *3–4 (E.D.N.Y. Nov. 29, 2021) (dismissing for lack of standing two FDCPA cases that invoked the "mailing vendor theory of liability" under the FDCPA, based on the plaintiff's failure to allege a concrete injury, noting that *Hunstein II*, having been vacated, was of "little persuasive value"); *Shields v. Prof'l Bureau of Collections of Md., Inc.*, No. 2:20-cv-02205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct.

14, 2021) (dismissing § 1692c(b) claim for lack of Article III standing, stating: "Plaintiff does not allege that anyone has read her information rather than merely processed it or that there's otherwise been publicity. Thus, she has not alleged an injury traditionally recognized in American courts." (internal citation omitted)); *In re FDCPA Mailing Vendor Cases*, No. CV 21-2312, 2021 WL 3160794, at *6 (E.D.N.Y. July 23, 2021) (same).

This court finds Stewart's reliance on *Hunstein II* misplaced and, like other courts that have considered the question, agrees that a vacated opinion is of little persuasive value. More persuasive are the district court opinions cited above. And, as in those cases, the plaintiff here does not allege or present facts suggesting that any actual person saw or read any private information concerning her or her daughter. Rather, Hillard's testimony indicates that HRRG provides information to Nordis in electronic format that enables the automatic creation and sending of dunning letters. (Doc. No. 74, Hillard Dep. 53–55, 161–62.) Moreover, the tort of invasion of privacy under Tennessee law requires the "*public* disclosure of private facts," such that a "[c]ommunication to a single individual or to a small group of people, absent breach of contract, trust, or other confidential relationship will not give rise to liability." *Jackson & Assocs., Ltd. v. Christl*, No. 01A019103CV00081, 1991 WL 155687, at *3 (Tenn. Ct. App. Aug. 16, 1991) (emphasis in original). Stewart's factual allegations and evidence do not show a *public* disclosure of private information. She has not, therefore, alleged an injury traditionally recognized in Tennessee or by other American courts. *Accord Shields*, 2021 WL 4806383, at *3. In addition, the court agrees that this type of exposure is not the type of "harm at which Congress was aiming" in passing the FDCPA. *Hunstein II*, 17 F. 4th at 1046 (Tjoflat, J., dissenting).

The court finds, in sum, that the plaintiff has failed to adequately allege facts or point to evidence that would establish an injury in fact, for purposes of establishing Article III standing.

Count I of the SAC, for violation of the FDCPA, 15 U.S.C. § 1692c(b), will be dismissed with prejudice for lack of subject-matter jurisdiction.

      *3.    Count II—False and Misleading Communications in Violation of the FDCPA, 15 U.S.C. § 1692e*

Count II of the SAC is premised upon allegedly confusing or misleading representations in one of the letters sent by HRRG to the plaintiff, even though the plaintiff acknowledges that she never received, and therefore could not have been confused or misled by, the letter. The plaintiff does not address Count II in her Motion for Partial Summary Judgment. In response to the defendant's Motion for Summary Judgment directed to Count II, the plaintiff states that, while she "still believes the letter violates § 1692e, she is no longer pursuing this claim based on the recent significant change in the standing analysis." (Doc. No. 81, at 12.) As the plaintiff never received the allegedly misleading letter and essentially concedes that she lacks standing to pursue this claim, the court will grant the defendant's Motion for Summary Judgment, insofar as it seeks judgment on this claim. This claim, too, will be dismissed with prejudice for lack of subject-matter jurisdiction.

      *4.    Count III—False Representation of the Character or Amount of a Debt in Violation of the FDCPA, 15 U.S.C. § 1692e(2)(A)*

The FDCPA provides that a debt collector "may not use any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute provides a list of examples of activities that, among others, would violate this provision, including the "false representation of . . . the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). "[M]ost, if not all, courts to consider this issue have held that an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt." *Christopher v. RJM Acquisitions LLC*, No. CV-13-02274-PHX-JAT, 2015 WL 437541, at *4 (D. Ariz. Feb. 3, 2015) (interior quotation marks and citation omitted) (collecting cases).

Count III of the SAC asserts that the defendant violated this prohibition. The claim is apparently premised upon the plaintiff's allegation that she did not actually owe any amount of the Debt that HRRG sought to recover on behalf of the SMC, because the entirety of her daughter's medical bill was covered by insurance. (*See* SAC ¶¶ 21, 23 ("Upon information and belief, the [Debt] was paid in full by the patient's insurance.").)

The plaintiff does not move for summary judgment on Count III, implicitly recognizing the existence of a material factual dispute as to whether she owed the Debt. HRRG has no such qualms. It moves for summary judgment on this cause of action, asserting that it is undisputed that Stewart owed $1,014 and $968 for medical services provided on two separate occasions to Stewart's minor daughter and that the plaintiff was financially responsible for debts incurred by her minor daughter. In support of that statement, it cites only the HRRG dunning letters that were attached as exhibits to the SAC. (*See* Doc. No. 78-1, at 3–4; Doc. No. 78-2 ¶ 11.) It has not provided itemized bills from the SMC or any actual evidence to support the amount it claims the plaintiff owes.

HRRG also asserts that, by signing the Consent Form, Stewart "consented to being responsible for her minor daughter's medical debt." (Doc. No. 78-1, at 2, 3–4.) It characterizes Stewart's deposition testimony as stating only that Stewart did not owe the balances HRRG claimed because the medical treatment was provided to her minor daughter instead of herself. (*Id.* at 12.)

The plaintiff has never admitted that the sums of $1,014 and $968 were owed to the SMC in connection with the medical services provided to her daughter or that she was financially responsible for that amount. Instead, she testified that she never received a bill from the hospital or explanations of benefits from the insurer, but she understood that the medical services provided

to her disabled daughter were entirely covered by insurance. (Stewart 2021 Dep. 35, 39.) In her Statement of Additional Facts submitted with her Response to the defendant's Motion for Summary Judgment, the plaintiff asserts that the insurance plan covering her daughter at the time provided payment for all medical services rendered, with no out-of-pocket payments owed by the patient (or family members). (Doc. No. 84 ¶ 11 (citing https://www.molinahealthcare.com/-members/ky/hp/medicaid/overvw/coverd/benefits.aspx and https://www.molinahealthcare.com/-members/ky/en-us/mem/medicaid/medicaid.aspx).) The defendant objects to the citations to these websites as inadmissible hearsay and lacking in foundation.[7]

Irrespective of whether the court can consider the information on the websites cited by the plaintiff and as to whether the plaintiff has offered competent evidence of the terms of her daughter's insurance coverage, the defendant's citation to its own dunning letters is not sufficient to establish as a matter of undisputed fact that the plaintiff owed the amounts stated on those letters. The plaintiff's attaching those letters to the SAC and referencing them in her pleading does not constitute an admission that she owed the amounts sought, and the pleading, in fact, unambiguously states that the plaintiff did not owe the amounts sought because any amounts owed were covered by the patient's insurance. The plaintiff continues to dispute the Debt. And even assuming that some amount was owed, over and above the amount reimbursed by insurance, there is also a material factual dispute as to whether the plaintiff agreed to be the guarantor of any

_____

[7] The plaintiff also asserts that medical service providers that participate in a State Medicaid plan "must accept the state-approved Medicaid payment as payment-in-full, and may not require that patients pay anything beyond that amount." (Doc. No. 81, at 13 (quoting *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 314 (6th Cir. 2005)).) *Spectrum Health*, however, also quoted the accompanying regulation stating that a state "must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency *plus any deductible, coinsurance or copayment required by the plan to be paid by the individual*." *Id.* (quoting 42 C.F.R. § 447.15) (emphasis added).

amounts owed to the SMC for the services provided to her minor daughter, since there is a question of fact as to whether the plaintiff signed the Consent Form.

The defendant's Motion for Summary Judgment will be denied as to this claim.

     5.     *Count IV—Threatening or Taking Illegal Action in Connection with the Collection of a Debt, in violation of the FDCPA, 15 U.S.C. § 1692e(5)*

The plaintiff asserts that the defendant violated 15 U.S.C. § 1692e(5) by "placing telephone calls to Plaintiff's wireless number and leaving voicemail messages using an artificial or prerecorded voice." (SAC ¶ 98.) The SAC does not spell this out, but the plaintiff's theory is that by violating the TCPA—by placing calls and leaving voicemail messages using an artificial or prerecorded voice—the defendant also violated § 1692e(5) of the FDCPA.

As discussed above, the plaintiff's argument in support of her Motion for Partial Summary Judgment on her TCPA claim is that she never consented to such calls; the defendant's response is that she did consent to the calls. Likewise, in support of its own Motion for Summary Judgment and in response to the plaintiff's Motion for Partial Summary Judgment on Count IV, the defendant argues that the plaintiff consented to contacts by debt collectors in connection with the Debt.

The court has already found that there is a genuine and material factual dispute as to whether the plaintiff gave consent to calls in connection with both accounts making up the Debt. Accordingly, neither party is entitled to summary judgment with respect to Count IV.

## V.     CONCLUSION

For the reasons set forth herein, the court will deny the plaintiff's Motion for Partial Summary Judgment and grant in part and deny in part the defendant's Motion for Summary Judgment.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge